Jeanette VERNA, on behalf of herself
and all others similarly
situated, Plaintiff,

v.

Gregory L. COLER, Secretary, Depart-
ment of Health and Rehabilitative Ser-
vices, State of Florida, De-
fendant/Third Party Plaintiff,

v.

Richard E. LYNG, Secretary, United
States Department of Agriculture and
Consumer Services, Third Party Defen-
dant.

No. 87-0495-CIV.

United States District Court,
S.D. Florida.

March 16, 1989.

Maria L. Soto, Florida Rural Legal Ser-
vices, Inc., Fort Pierce, Fla., Sally Schmidt,
Florida Rural Legal Services, Inc., Belle
Glade, Fla., for plaintiff.

Carl Morstadt, Asst. Gen. Counsel, Dept.
of Health and Rehabilitative Services, Talla-
hassee, Fla., for defendant Coler.

Lynn Rosenthal, Asst. U.S. Atty., Miami,
Fla., for third party defendant Lyng.

## MEMORANDUM OPINION

SCOTT, District Judge.

This is a class action lawsuit challenging
the "voluntary quit" regulation promul-
gated under the Food Stamp Act, 7 U.S.C.
§ 2011 *et seq.* As the case presents purely
a legal issue of statutory construction, the
Court resolves the matter on the parties'
Cross-Motions for Summary Judgment.

## I. FACTUAL BACKGROUND

The facts are not in dispute. In October
1985, Jeanette Verna applied for food
stamp benefits at the Florida Department
of Health and Rehabilitative Services
(HRS) food stamp office in Indian River
County, Florida. Verna named herself on
the application as head of the household,
and listed her two children, Robert and
Patricia Verna, and her boyfriend, Law-
rence Riley, as members of the household.
Although Riley earned more money than
Verna, he was a transient member of the
household, and even when present, contrib-
uted only to the rent. Verna maintained
the lease and all utility accounts for the
household under her name. In addition,
she bought and prepared the family's food,
and provided for the children's schooling
and medical needs.

After HRS certified the family's applica-
tion, Verna submitted Monthly Eligibility
and Income Reports to the HRS food stamp
certification office. On June 26, 1986, Ver-
na received a Notice of Case Action from
her HRS food stamp certification worker
informing her that the household was dis-

qualified from receiving food stamps for July—September, 1986 because Riley had voluntarily quit his job without good cause. In November 1986, Verna requested that HRS restore all food stamp benefits withheld from her household for this three month period. HRS denied her request. When Verna questioned the decision, HRS mailed her a copy of HRS Manual Chapter 8–13 entitled "Voluntary Quit," which provides that any household whose primary wage earner voluntarily quits any job without good cause shall be ineligible to participate in the food stamp program for three months. Thereafter, Plaintiff filed this lawsuit.

## II. CONTENTIONS OF THE PARTIES

In her class action complaint against Richard E. Lyng, Secretary of the United States Department of Agriculture and Consumer Services (USDA), and Gregory L. Coler, Secretary of HRS, Plaintiff challenges the "voluntary quit" regulation promulgated by the Secretary of USDA and implemented by the Secretary of HRS in Florida.[1] Plaintiff seeks restoration of food stamp benefits and a declaratory judgment that the regulation conflicts with the Food Stamp Act in violation of Plaintiff's rights under the due process clause and equal protection clause of the Fifth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983. Defendants' position is that the regulation is a permissible construction of the Act. Our analysis follows.

## III. LEGAL ANALYSIS

### A. Statutory Language

Under the reform amendments to the Food Stamp Act, if the "head of the household" voluntarily quits any job without good cause, then the entire household becomes ineligible to participate in the state food stamp program for 90 days. 7 U.S.C. § 2015(d)(1)(B)(ii). Although the term "head of the household" is not defined in the Act, the Secretary of USDA is given general authority to issue regulations that are necessary or appropriate to implement the Act. 7 U.S.C. 2013(c). Pursuant to

this authority, the Secretary has issued a regulation that substitutes the term "primary wage earner" for "head of the household." 7 C.F.R. § 273.7. Thus, under the regulation, the primary wage earner disqualifies the entire household from coverage by voluntarily quitting work without good cause.

### B. Statutory Construction

 In reviewing an agency's construction of a statutory term, the Court must address two issues. First, the Court must determine whether Congress has clearly expressed its intent on the precise question at issue. *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed. 2d 694 (1984). If the intent of Congress is clear, the inquiry is at an end, for the Court must give effect to that intent, and any contrary administrative construction must fall. *Id.* at 843 n. 9, 104 S.Ct. at 2781 n. 9.

However, where the statute is silent or ambiguous on the term at issue, the Court is not free to "simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Id.* at 843, 104 S.Ct. at 2782. Rather, the Court must defer to the agency's interpretation as long as it is a permissible construction of the statute. *Id.* The regulation need not embody the only permissible construction of the statute, as long as the agency's interpretation is a reasonable one. *Id.* at 843–44 & 843 n. 11, 104 S.Ct. at 2781–82 & 2782 n. 11.

Applying this standard, we find that the Secretary's interpretation is reasonable because it furthers the reform objectives of the amendments to the Food Stamp Act. The voluntary quit provision was intended to reduce fraud and abuse of the food stamp program and simplify administration. H.R.Rep. No. 95–464, 95th Cong., 1st Sess. at 168, *reprinted in* 1977 U.S.Code Cong. & Ad.News 1704, 1978, 2138. More specifically, the provision was designed to prevent families from making themselves dependent on the food stamp program by deliberately turning off their principal

---

**1.** Lyng was initially dismissed from the action and then rejoined by Coler as a third party defendant.

source of support. *See Wilson v. Lyng,* 856 F.2d 630, 634–35 (4th Cir.1988). Even when the decision to quit work is not directed at obtaining welfare benefits, the result is the same. We agree with the Secretary that Congress intended that "those needy who are able to contribute toward their support, even in small measure, be encouraged to do so, for their own sake as well as for the sake of the needy who would thereby have available to them a greater portion of the federal funds allotted to the Food Stamp Program." Defendants' Brief at 10; *see* Senate Rep. No. 97–504, 97th Cong., 2nd Sess., *reprinted in* 1982 U.S.Code Cong. & Ad.News 1641, 1677 (The purpose of the voluntary quit provision is to place more emphasis "on providing benefits to those who are unable to provide for themselves and less to those, such as in this situation, who have *made* themselves 'needy.' ") (emphasis in original).

Indeed, there is some evidence that Congress viewed the terms "primary wage earner" and "head of the household" as interchangeable. In 1981, when Congress extended the voluntary quit provision to cover households already certified to receive benefits, as well as households applying for the first time, the term "primary wage earner" appeared in the House and Senate Conference Committee Reports as if it were the equivalent of the term "head of the household." *See* H.R. Conference Rep. No. 377, 97th Cong., 1st Sess., *reprinted in* 1981 U.S.Code Cong. & Ad.News 1965, 2250, 2315; Senate Conference Rep. No. 290, 97th Cong., 1st Sess., p. 218 (1980). More importantly, at that juncture, Congress did not take the opportunity to correct the Secretary's interpretation of the Act, as it could easily have done by providing a contrary definition. "Congress is deemed to know the executive and judicial gloss given certain language and thus adopts the existing interpretation unless it affirmatively acts to change the meaning.... Congressional silence in the Act indicates acceptance of the prior practice." *Florida National Guard v. Federal Labor Relations Authority,* 699 F.2d 1082, 1087 (11th Cir.), *cert. denied,* 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983) (citations omitted).

Confronted with these arguments, Plaintiff contends that the Secretary had no authority to construe "head of the household" to mean "primary wage earner," because this is contrary to the plain meaning of the Act. Plaintiff relies on *Anderson v. Lyng,* 644 F.Supp. 1372 (M.D.Ala.1986), in which the court invalidated the voluntary quit regulation under a plain meaning analysis. That court concluded that the term head of household

> suggests on its fact the most responsible person in the household, the person with primary responsibility for the household. *See Webster's Third New International Dictionary* 1046 (1976) ("head" defined as "director, chief," "one in charge"); *Black's Law Dictionary* 648 (1979) ("head of family or household" means person legally or morally obligated and entitled to and who actually does support, maintain and control family).

*Id.* at 1375.

It is true that ordinarily a term is given its plain meaning.[2] However, this rule does not apply when the statutory language or legislative history indicates that Congress intended otherwise. *Board of Governors v. Dimension Financial Corp.,* 474 U.S. 361, 369 & 373, 106 S.Ct. 681, 690 & 695, 88 L.Ed.2d 691 (1986). In the present case, applying Plaintiff's "traditional definition" would frustrate the purpose of the Act by permitting the person most able to support the household to quit work without good cause, and then shift the economic burden to the Government at

---

**2.** We are not convinced that the term "head of the household" has a plain meaning. The term has been variously defined. For example, Florida courts apply two distinct tests when making the factual determination as to which person is the head of the family under the homestead exemption of the Florida Constitution, Article X, Section 4: "(1) a legal duty to support that arises out of a family relationship—'family in law,' or (2) continued communal living by at least two individuals in such circumstances that one is regarded as being in charge—'family in fact.' " *Flannery v. Green,* 482 So.2d 400, 402 (Fla. 2d DCA 1985), *review denied,* 491 So.2d 279 (1986).

the expense of other needy families. Moreover, under Plaintiff's definition, the agency would be put in the difficult position of making a subjective determination of who was responsible for the household in a given case. This administrative burden would be contrary to the intent of Congress to simplify administration of the Act. *See* 1977 U.S.Code Cong. & Ad.News, 1978, *supra* at 2138.

In so holding, we draw support from the recent Fourth Circuit opinion in *Wilson v. Lyng,* 856 F.2d 630 (4th Cir.1988). The court in *Wilson* upheld the validity of the voluntary quit regulation upon a finding that the regulation "furthers the statutory goal of self-sufficient household units." In reversing the district court, the Fourth Circuit stressed that it is not the court's function to pass on the substantive fairness of a regulation as long as the administrative determination is based on a reasonable interpretation of the statute. *Id.* at 632–33. Consistent with this analysis, we find that the Secretary's determination was permissible as a reasonable construction of the Food Stamp Act.[3]

## IV. CONCLUSION

The Court concludes that the voluntary quit regulation is valid as a permissible construction of the Act in the exercise of the Secretary's delegated powers. In accordance with this opinion, it is therefore

ORDERED and ADJUDGED as follows:

1. Plaintiff's Motion for Summary Judgment is DENIED;

2. Defendant Coler's Cross–Motion for Summary Judgment is GRANTED.

DONE and ORDERED.

## FINAL JUDGMENT

In accordance with Fed.R.Civ.Pro. 58, the Court hereby enters final judgment in favor of Defendant Coler and against Plaintiff in this case. As the Final Judgment in favor of Defendant Coler renders moot Coler's third party complaint against Defen-

dant Lyng, the third party complaint is dismissed with prejudice. This entire case is dismissed with prejudice and is closed for all further administrative purposes.

DONE and ORDERED.

---

**3.** In reaching this conclusion, we note that our holding appears to conflict with the opinion authored in *Anderson v. Lyng,* 644 F.Supp. 1372 (M.D.Ala.1986). In order to resolve this conflict, we suggest that Plaintiff seek appropriate appellate review.