Jesus VALENZUELA; Luz Valenzuela, individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

Clayton YEUTTER, Secretary of the United States Department of Agriculture; Linda Rae Moore–Canon, Director of Department of Economic Security, Defendants–Appellees.

No. 91–15400.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 1992.

Decided March 16, 1993.

As Amended April 15, 1993.

---

William E. Morris, Southern Arizona Legal Aid, Inc., Tuscon, AZ, for plaintiffs-appellants.

Richard A. Olderman, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.

Before: FLETCHER, POOLE and BRUNETTI, Circuit Judges.

POOLE, Circuit Judge:

Appellants Jesus and Luz Valenzuela appeal the district court's grant of summary judgment in favor of appellees Clayton Yeutter and Linda Rae Moore–Canon, the Secretary of the United States Department Agriculture and Director of the Department of Economic Security, respectively. Because we find the Secretary of Agriculture's interpretation of "head of household" as the "primary wage earner" reasonable and within his broad discretion, we affirm the district court's decision.

I.

Jesus and Luz Valenzuela, a married couple with two children, were participants in the Food Stamp Program. On their September 23, 1988 application for food stamps, Mr. Valenzuela was designated the "head of the household." Mr. Valenzuela was unemployed and had previously qualified for Social Security disability payments. Mrs. Valenzuela was employed in a restau-

rant working thirty-six hours per week at minimum wage. Mrs. Valenzuela quit her job on September 2, 1988.

The Valenzuelas were disqualified from receiving food stamps on September 28, 1988. Because Mrs. Valenzuela was determined to be the "primary wage earner," she was designated by the Arizona Department of Economic Security ("DES"), the administrator of that state's Food Stamp program, to be the "head of household" for purposes of the voluntary quit provision of the Food Stamp Act, 7 U.S.C. § 2015(d)(1)(B)(ii), and was found to have quit her job without "good cause." This decision was affirmed in the Valenzuelas' administrative appeals.

The Valenzuelas sought declaratory and injunctive relief in the district court. The district court granted summary judgment against the Valenzuelas, holding that the regulations defining "head of the household" for purposes of the voluntary quit provision were consistent with congressional intent and were a reasonable exercise of the Secretary's statutory authority.

## II.

■ This case involves the interpretation of the Food Stamp Act, a question of law this court reviews *de novo. California Rural Legal Assistance v. Legal Services Corp.*, 917 F.2d 1171, 1174 (9th Cir.1990), *amended*, 937 F.2d 465 (9th Cir.1991).

■ This case also involves the review of the regulations promulgated under the Food Stamp Act. Judicial review of an agency's construction of a statute that it administers is a two-part process. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). First, a court examines "whether Congress has directly spoken to the precise question at issue." *Id.* If Congress's intent is clear, then the court must give effect to that intent. *Id.* at 842–43, 104 S.Ct. at 2781. Second, if the court determines Congress has not directly addressed the precise question at issue, then the court must decide whether the agency's interpretation is

a permissible construction of the statute. *Id.* at 843, 104 S.Ct. at 2782.

## III.

### A. *Background*

In 1964, Congress enacted the Food Stamp Act "to promote the general welfare, [and] to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. In 1977, Congress added the voluntary quit provision to "eliminate the non-needy from the [Food Stamp] program," simplify administration, and reduce fraud and abuse. H.R.Rep. No. 464, 95th Cong., 1st Sess. 1–2, *reprinted in* 1977 U.S.C.C.A.N. 1705, 1978, 1978–79.

Although the voluntary quit provision originally covered only applicants, Congress extended its coverage in 1981 to include households already participating in the food stamp program. Pub.L. No. 97–98, § 1311, 95 Stat. 1213, 1285 (1981). In 1982, the provision was amended to increase the period of ineligibility from sixty to ninety days. Pub.L. No. 97–253, § 158(a), 96 Stat. 763, 777 (1982). In 1985, it was amended again to allow the household to resume participation if the household member who committed any violation disqualifying the household leaves the household. Pub.L. No. 99–198, § 1516, 99 Stat. 1571, 1573 (1985).

At the time it was enforced against the Valenzuelas, the voluntary quit provision read in pertinent part as follows:

> [N]o household shall be eligible to participate in the food stamp program ... if the head of the household voluntarily quits any job without good cause, but, in such case, the period of ineligibility shall be ninety days.

7 U.S.C. § 2015(d)(1)(B)(ii).

While many of the terms employed in the Food Stamp Act were defined by Congress, the phrase "head of household," as found in the voluntary quit provision, was not. *See* 7 U.S.C. § 2012. Congress, however, did provide that the Secretary of Agriculture was authorized to "issue such regula-

tions consistent with [the Act] as [he] deems necessary or appropriate." 7 U.S.C. § 2013(c). In keeping with this authority, in 1964 the Secretary defined "head of household" as the "member of the household in whose name application is made for participation in the [Food Stamp] Program." 29 Fed.Reg. 16784, 16785 (1964).

In 1979, after the enactment of the voluntary quit provision, the Secretary promulgated a regulation defining the "head of household" as " 'that household member ... who was responsible for acquiring the greatest amount of financial support.' " Under this regulation, states were allowed to define "head of household" as they chose fit for administrative purposes, but for purposes of the voluntary quit provision, the "head of household" was defined as the "primary wage earner." A "primary wage earner" was defined as "that household member age 18 or over who was acquiring the greatest amount of earned financial support for the household at the time of the quit." 44 Fed.Reg. 17,982, 17,984 (1979).

Over the years, the Secretary promulgated further regulations implementing the statute. The voluntary quit regulation, 7 C.F.R. § 273.7(n), now provides:

> No household whose head of household, as defined in § 273.1(d)(2), voluntarily quit a job of 20 hours a week or more without good cause 60 days or less prior to the date of application or at any time thereafter shall be eligible for participation in the program
>
> ....

Section 273.1(d)(2), which defines "head of household" for the purposes of § 273.7(n), states that the "head of household" shall be considered the "principal wage earner," who is defined as "the household member (including excluded members) who is the greatest source of earned income in the two months prior to the month of the violation." 7 C.F.R. § 273.1(d)(2).

### B. Statutory Construction.

#### 1. Congress's Intent.

■ To determine whether Congress intended to give a statutory provision a particular meaning, we assume that the legislative purpose is expressed by the ordinary meaning of the words used unless they are otherwise defined. *Board of Governors v. Dimension Fin. Corp.*, 474 U.S. 361, 369–70, 106 S.Ct. 681, 686–87, 88 L.Ed.2d 691 (1986); *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979).

"Head of household" is not defined in the Food Stamp Act, and, based on the relevant legislative history, we conclude that it is unclear what meaning Congress intended for this intrinsically ambiguous term. When Congress enacted the original voluntary quit provision, it stated, "[t]here is no prohibition, however, against the head of household (that member in whose name application is made for participation in the program) ... quitting work and thereby rendering the entire household eligible for food stamps." H.R.Rep. No. 464, 95th Cong., 1st Sess. 168, *reprinted in* 1977 U.S.C.C.A.N. at 2138. On the other hand, in 1981, when Congress amended the voluntary quit provision to apply to households already receiving food stamps, a House Conference Report stated that the purpose of the provision was to "extend the scope of the existing law disqualifying applicant households for 60 days, if the *primary wage earner* has voluntarily quit a job without good cause, to include recipient households." H.R.Conf.Rep. No. 377, 97th Cong., 1st Sess. 218, *reprinted in*, 1981 U.S.C.C.A.N. 2250, 2315 (emphasis changed). Likewise, a Senate report referred to the head of household as the primary wage earner for purposes of the voluntary quit provision. S.Rep. No. 128, 97th Cong., 1st Sess. 18 (1981). Thus, while it appears that Congress may have intended the amended voluntary quit provision to equate "head of household" with "primary wage earner," this intention is not sufficiently clear.

### C. Agency's Interpretation.

■ As Congress' intended meaning of "head of household" is unclear, we must decide whether the regulations' interpretation is a permissible one. In this approach,

we follow the analysis of the Fourth and Eleventh Circuits, which found Congress's intent unclear and evaluated the reasonableness of the regulation. *Wilson v. Lyng,* 856 F.2d 630, 634 (4th Cir.1988); *Verna v. Coler,* 710 F.Supp. 1339, 1341 n. 2 (S.D.Fla.1989), *aff'd,* 893 F.2d 1238 (11th Cir.1990) (per curiam), *cert. denied,* 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 38 (1990).

■ Where, as here, Congress has given an agency authority to elucidate a specific provision of the statute by regulation, such "regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2782. We need not conclude the agency's construction is the only one permitted or one we would have adopted. *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11.

■ Four circuits have already held that § 273.1(d)(2) is a reasonable interpretation of the congressional intent behind the voluntary quit provision. *See Maine Assoc. of Interdependent Neighborhoods v. Yeutter,* 946 F.2d 4, 8 (1st Cir.1991); *Lepage v. Yeutter,* 917 F.2d 741, 746 (2d Cir.1990); *Verna v. Coler,* 893 F.2d 1238, 1241 (11th Cir.) (per curiam), *cert. denied,* 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 38 (1990); *Wilson v. Lyng,* 856 F.2d 630, 636 (4th Cir.1988). Similar to those circuit's conclusions, we find that the regulation is not arbitrary, capricious or manifestly contrary to the statute. The regulations defining "head of household" as "primary wage earner" were intended to "prevent the family breadwinner from voluntarily quitting work and then immediately relying on the program for support." 43 Fed.Reg. 18,879 (1978). This regulation is a permissible means of furthering the purpose of the voluntary quit provision, to make food stamps available to those who are truly in need. *See* H.R.Rep. No. 464, 95th Cong., 1st Sess. 1–2, *reprinted in* 1977 U.S.C.C.A.N. 1978, 1978–79.

D. *1990 Amendments.*

■ In November 1990, Congress amended the voluntary quit provision to include the following:

The State agency shall allow the household to select an adult parent of children in the household as its head where all adult household members making application agree to the selection. The household may designate its head of household under this paragraph each time the household is certified for participation in the food stamp program, but may not change the designation during a certification period unless there is a change in the composition of the household.

Pub.L. No. 101–624, § 1725, 104 Stat. 3787, 3788 (Nov. 28, 1990).

■ While this amendment is significant for future food stamp recipients, it does not change the result of this case. A recent congressional enactment is not an indication of an earlier Congress' intent. *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 331–32, 4 L.Ed.2d 334 (1960). This case is governed by the regulations promulgated under the then-existing provision, and we find those regulations to be reasonable.

AFFIRMED.