**Sonya VALENZUELA, individually and on behalf of her minor children and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Michael ESPY, as Secretary of the United States Department of Agriculture and Charles Cowan as Director of the Department of Economic Security, State of Arizona, Defendants.**

**No. CIV 93–456–TUC–RMB.**

United States District Court,
D. Arizona.

Dec. 16, 1993.

William E. Morris and Anne F. Ward, Southern Arizona Legal Aid, Inc., Tucson, AZ, for plaintiffs.

Patricia Arzuaga, Asst. U.S. Atty., Washington, DC, and Robert S. Segelbaum, Asst. Atty. Gen., Phoenix, AZ, for defendants.

## ORDER

BILBY, District Judge.

### I. STATEMENT OF THE CASE

Plaintiff was denied food stamp eligibility because she was a co-owner of a 1993 Dodge Caravan van which had a purchase price was $17,991.60, a Kelly Blue Book value of $14,000 and a bank lien of $18,000. Plaintiff alleges that her vehicle should be considered an "inaccessible resource" under 7 U.S.C. § 2014(g)(5) since the lien more than the vehicle's fair market value. Defendant Espy, and the State of Arizona by joinder, seek to dismiss this action because the legislative history, the long-standing valuation of vehicles using "fair market value" and the Secretary's interpretation of (g)(5) to preclude vehicles does not allow for such a conclusion.

### II. MOTION TO DISMISS STANDARD

"The conditions that must be met before a motion my be granted under Federal Rule of Civil Procedure 12(b)(6) are quite strict. A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 695–696 (9th Cir.1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). "Dismissal can be based on the lack of a cognizable theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990). When ruling on a Rule 12(b)(6) motion, the court must accept the allegations as true and construe them in the light most favorable to the plaintiff. *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir.1990).

## III. UNDISPUTED FACTS AND BACKGROUND

The Food Stamp Act, 7 U.S.C. § 2011, *et seq.*, establishes a federally funded, state administered program to supplement the food purchasing power of low income households. The program is funded by the United States Department of Agriculture. The Secretary of Agriculture ("Secretary") is charged by statute with promulgating national uniform eligibility standards for the Food Stamp Program. 7 U.S.C. § 2014(b). Although eligibility for participation in the food stamp program is determined on the basis of national standards, the program is administered in Arizona by the Arizona Department of Economic Security ("DES.") who makes the actual eligibility determinations. In carrying out its duties, DES must adhere to regulations implementing the Act promulgated by the Secretary. 7 U.S.C. § 2013(c).

Subsection 2014(g)(1) grants the Secretary general authority to define the resources a household can own. Under controlling provisions of federal law, a motor vehicle qualifies as a "resource" of the applicant's household which requires further evaluation to determine whether it affects the applicant's eligibility for benefits. Federal legislation includes a general restriction on the value of non-exempt resources that an otherwise-eligible household may own and still qualify for food stamps.

As provided in 7 U.S.C. § 2014(g)(1), the general reserve asset limitations for a household with an elderly or disabled member is $2000. Ownership on non-excluded, or countable assets valued at more than $2,000 therefore operates to disqualify any such household from the program. Section 2014(g) delineates certain assets that must be taken into account in determining a household's total liquid and nonliquid resources countable against the $2,000 limit.

7 U.S.C. § 2014(g)(2) and USDA regulation 7 C.F.R. § 273.8(h) provide that licensed vehicles whose "fair market value" is $4,500 or less are excluded from the reserve. The value in excess of this $4,500 allowance is counted against the reserve. In households with more than one vehicle, the equity value of certain vehicles may be used in calculating the household eligibility if the equity value is *greater* than the amount. the fair market value exceeds $4,500. 7 C.F.R. § 273.8(h)(4), (5), (6).

Prior to 1990, the Secretary thus promulgated regulations providing that state agencies had to exclude certain household resources from countable assets, either in whole or in part depending upon the circumstance and value of the vehicular assets as set forth in 7 C.F.R. § 273.8 Those pre-1990 regulations specifically declared that in valuing the extent to which an automobile used for work-related and other ordinary household transportation was an available resource, state administrators could only disregard any liens on the vehicle up to a maximum amount of $4,500. *See* 7 C.F.R. § 273.-8(h). These pre-1990 regulations also directed state eligibility workers to determine the current Blue Book value of any such household vehicle and then deduct from that amount a maximum of $4,500 even if the vehicle was subject to a valid lien in the amount approaching or exceeding Blue Book value.

In 1990, Congress amended 7 U.S.C. § 2014(g) and *inter alia,* added subsection (g)(5). This provided that an otherwise eligible household could not be disqualified from the food stamp program based on the ownership of a resource when the sale of that resource would not yield significant funds for the household. Specifically, subsection (g)(5) declared that a household asset must be excluded as an inaccessible resource if "as a practical matter, the household is unlikely to be able to sell [it] for any significant return because the household's interest is relatively slight or because the cost of selling the household's interest would be relatively great." 7 U.S.C. § 2014(g)(5).

The 1990 amendments directed the Secretary of Agriculture to promulgate rules enabling state agencies to develop standards, consistent with 7 U.S.C. § 2014(g)(5) for identifying inaccessible resources and ensuring that such excluded assets would have no adverse effect on any household's eligibility for food stamps.

In August 1991, the Secretary of Agriculture issued proposed regulations that would have defined an inaccessible resource as one "with an expected sale price of $2,000 or less where the cost of selling the resource exceeds 75% of the expected sale price." 56 Fed.Reg. No. 156, 40166 (August 13, 1991). These regulations which were proposed to implement the 1990 amendments were later withdrawn by the Secretary.

In 1991, Congress further amended 7 U.S.C. § 2014(g)(5) to provide that a resource is inaccessible to a food stamp household if its sale is "not likely to produce a significant amount of funds for the support of the household." 7 U.S.C. § 2014(g)(5) as amended December 13, 1991, by Pub.L. 102–237, Title IX, §§ 902–906, 941(2) ("the 1991 Amendment").

Following the 1991 amendment to subsection (g)(5), the Secretary issued a memorandum, dated December 7, 1991, that instructed states to "exercise their best judgment regarding procedures for applying" the inaccessible resource provisions in the 1990 and 1991 amendments to 7 U.S.C. § 2014(g).

The Secretary has not yet promulgated any regulations, either in interim or final form that implement the inaccessible resource provisions of 7 U.S.C. § 2014(g)(5). On January 31, 1992, the Deputy Administrator of the Food and Nutrition Service issued, under the authority of the Secretary, a notice to its regional offices stating that the inaccessible resource provisions of 7 U.S.C. § 2014(g)(5) do not apply to motor vehicles. The regional offices, in turn, disseminated this directive to all state agencies administering the food stamp program.

Consequently, in determining Plaintiff's eligibility for food stamps, Arizona's DES staff followed the directive and deemed 7 U.S.C. § 2014(g)(5) inapplicable to the valuation of Plaintiff's 1993 Dodge Caravan, thereby treating it as an "available," rather than as an "inaccessible" resource. DES determined that the Kelly Blue Book value of the van to be slightly less than $14,000. From that amount, DES subtracted an exemption of $4,500. The resulting value of $9,500 was deemed a "resource" available to plaintiffs' food stamp household. Following the Secretary's directive, DES made no assessment of whether the Dodge Caravan was an inaccessible resource within the meaning of 7 U.S.C. § 2014(g)(5).

## IV. GOVERNMENT'S MOTION TO DISMISS

Michael Espy, Secretary of the United States Department of Agriculture (the "Federal Defendants") and Charles Cowan, Director of the Department of Economic Security, State of Arizona (the "State Defendant") by joinder, assert that this Complaint must be dismissed because the Federal Defendants' interpretation of the regulations in question is a reasonable interpretation of the Food Stamp Act. Additionally, Defendants argue that legislative history demonstrates that Congress did not intend to exclude heavily encumbered vehicles from a household's resources under the "inaccessible resources" provision.

### 1. Secretary's Interpretation of the Food Stamp Act

The Secretary has interpreted the Food Stamp Act to exclude motor vehicles from the "inaccessible resources" provision. Defendants also argue that a contrary interpretation is not supported by the plain language of the Act or its legislative history.

The Food Stamp Act expressly charges the Secretary with the implementation and administration of the food stamp program. 7 U.S.C. §§ 2013(c), 2014(b). The Supreme Court has stated that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. NRDC,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Consequently, the Defendants assert that the Court should accord considerable deference to the Secretary's interpretation of the Food Stamp Act and its underlying regulations.

To sustain the Secretary's interpretation, this Court need not find that its construction is the only reasonable one, or even that it is the result [the court] would have reached had the question arisen in the first instance in judicial proceedings. *Udall v.*

*Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), *reh'g denied,* 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283 (1965). Rather, this Court need only find that the agency's interpretation of the Food Stamp Act is reasonable. *See e.g., Valenzuela v. Yeutter,* 988 F.2d 977, 980–81 (9th Cir.1993); *Commonwealth of Massachusetts v. Lyng,* 893 F.2d 424, 432 (1st Cir.1990); *Biggs v. Lyng,* 823 F.2d 15, 19 (2d Cir.1987); *State of New York v. Lyng,* 829 F.2d 346, 351 (2d Cir.1987).

■ Congress has directed the Secretary to adopt formal regulations implementing and thereby construing 7 U.S.C. § 2014(g). To date, this has not been accomplished. Instead, the Secretary seeks this Court to rely on a January, 1992 notice issued to the regional offices by the Deputy Administrator of the Food and Nutrition Service as a reasonable interpretation which, in turn, requires judicial deference. This the Court declines to do. The Court finds that because the Secretary has not yet issued the required formal regulations that implement the inaccessible resource provisions of 7 U.S.C. § 2014(g)(5), the interim directive is not entitled to judicial deference. Moreover, for the following reasons the Court finds that a conclusion that Subsection (g)(5) does not apply to motor vehicles is unreasonable.

### 2. *Fair Market Value and Congress' Intent*

■ Congress originally enacted the "fair market value" provision of the Act in 1977. Pub.L. 95–113 Title XIII, § 1301 (Sept. 29, 1977); 91 Stat. 962. Prior to that time the Secretary by regulation had to be (1) exempting entirely one licensed vehicle used for household transportation as well as all vehicles necessary for employment and (2) counting the equity value of any other vehicle. H.R.Rep. 464, 95th Cong., 1st Sess. 78–

80, 88; 1977 U.S.C.C.A.N. 1704, 2056–58, 2066. In changing to a "fair market value" test in 1977, Congress stated that "[t]he equity of a household in such [nonexempt] vehicles would be irrelevant. Only excessive market value would jeopardize" an applicant's participation in the Food Stamp Program. H.R.Rep. 464, 95th Cong., 1st Sess. at 88.

Defendants assert that the rationale for valuing vehicles based on their fair market value was to protect the Food Stamp Program from "abuses of the kind that make the program subject to public criticism." H.R.Rep. 464, 95th Cong., 1st Sess. 88–89; 1977 U.S.S.C.A.N. 2066–67. Defendants contend that many food stamp recipients legitimately needed one or more cars, Congress thought there was no reason why any of these cars needed to be an expensive one.

Based on this proposition, the USDA's regulations have not considered encumbrances in counting the value of nonexempt vehicles towards the household's resource limit. The equity value is considered only for those extra vehicles not necessary for employment or household transportation, in which case the regulations require that the greater of the fair market value in excess of $4,500 or the equity value be counted towards the resource limit. 43 Fed.Reg. 18884–85 (5/2/78); 43 Fed.Reg. 47862–64, 47902 (10/17/78); *see also* 7 C.F.R. § 273.8(h)(3)–(6) (1992).[1]

Defendants assert that other sections of the Food Stamp Act demonstrate that Congress legislated clearly in seeking to treat vehicles separately from every other kind of asset for the purposes of determining program eligibility, yet accommodating obvious needs for transportation and maintenance of a livelihood. For example, Congress enacted provisions for vehicles used by the disabled, to produce earned income such as a taxi, truck or fishing boat, 7 U.S.C. § 2014(g)(2),

---

1. In summary the regulations provide:
   each licensed vehicle shall be handled as follows: First it will be evaluated to determine if it is exempt as an income producer or as a home. If not exempt, it will be evaluated to determine if its fair market value exceeds $4,500. If worth more than $4,500, the portion in excess of $4,500 for each vehicle will be counted as a resource. The vehicle will also

   be evaluated to see if it is equity exempt as the household's only vehicle or necessary for employment reasons. If not equity exempt, the equity value will be counted as a resource. If the vehicle has a countable market value of more than $4,500 and also has a countable equity value, only the greater of the two amounts shall be counted as a resource.
   7 C.F.R. § 273.8(h)(6) (1991).

and to transport fuel for heating or water for home use. Moreover, while Congress recently raised the $4,500 vehicle limitation for future food stamp applicants in response to concerns regarding the "fair market value" vehicle provision,[2] according to Defendants, it has not changed the basic requirement that a household vehicle must be the "fair market value" test.

Consequently, Defendants contend that Plaintiff is omitting the key elements of the legislative record and is overlooking the long-standing treatment of vehicles and inaccessible resources in the applicable regulations. Defendants contend that Congress has not deleted the "fair market value" assessments for vehicles, nor did it suggest that the long-standing regulatory provisions governing vehicles were in any way affected by the enactment of the "inaccessible resource" provisions in 1990 and 1991.

Finally, Defendants assert that the USDA regulations had long provided that certain resources were "inaccessible" and therefore excludable.[3] According to Defendants, Congress was not adding a new exemption to the regulatory scheme when it enacted the inaccessible resource amendment of 7 U.S.C. § 2014(g)(5) in 1990. While the language of the "inaccessible resource" provision is ambiguous by the fact that it does not define what is to be considered a "resource," it essentially codified the Secretary's pre-existing "inaccessible resource" regulations which were never applied to vehicles. Cf. 7 U.S.C. § 2104(g)(5) (1990) and 7 C.F.R. § 273.-8(e)(3)(8) (1987). Rather Defendants argue, vehicles have been consistently assessed on the basis of their fair market value since § 2014(g)(2) was enacted in 1977.

The Court concludes that Defendants' position is too narrow an interpretation and that tension between subsection (g)(2) and (g)(5) need not exist. The Court also declines to take a hyper-technical approach based on tradition when human sustenance is at stake. Instead, the Court agrees with Plaintiff that § 2014(g)(2) and (g)(5) should be read *in pari materia*.

Section 2014(g) [4] identifies its subject matter as the "[a]llowable financial resources

---

**2.** Congress recently amended the 7 U.S.C. § 2014(g)(2) "fair market value" vehicle provision to increases the vehicle limitation, but the amendments will have no effect on the proper valuation of the plaintiff's vehicle in this case. The vehicle limitation will be raised to $4,550 beginning September 1, 1994 through August 31, 1995, $4,600 beginning October 1, 1995 through September 30, 1996, and $5,000 beginning October 1, 1996. After October 1996, the vehicle limitation will be adjusted on each October thereafter to reflect changes in the Consumer Price Index. *See* Omnibus Budget Reconciliation Act of 1993 (P.L. 103–66, approved 8/10/93), H.R. 2264, 103rd Cong., 2d Sess. § 13923 (1993) ("Vehicles Needed to Seek and Continue Employment and for Household Transportation"). *See also* H.R.Rep. No. 271, 99th Cong., 1st Sess. 528, 1985 U.S.C.C.A.N. 2454; S.Rep. No. 397, 100th Cong., 1st Sess. 528, 1985 U.S.C.C.A.N. 2254; S. U.S.C.C.A.N. 2255, 2311, and 2327; S.Rep. No. 357, 101st Cong., 2d Sess. 1264, 1990 U.S.C.C.A.N. 5271 (proposals to raise the $4,500 vehicle limitation).

**3.** These regulations stated that "inaccessible resources" included, but were not limited to, such items as irrevocable trust funds, security deposits on rental property or utilities or property in probate. 43 Fed.Reg. 47901 (10/17/78); 7 C.F.R. § 273.8(e)(8).

**4.** 7 U.S.C. § 2014(g) states:

(g) **Allowable financial resources which eligible household may own.** (1) The Secretary shall prescribe the types and allowable amounts of financial resources (liquid and nonliquid assets) an eligible household may own, and shall, in so doing, assure that a household otherwise eligible to participate in the food stamp program will not be eligible to participate if is [sic] resources exceed $2,000, or in the case of a household which consists of or includes a member who is 60 years or older, if its resources exceed $3,000.
(2) The Secretary shall, in prescribing inclusions in, and exclusions from, financial resources, follow the regulations in force as of June 1, 1982 (other than those relating to licensed vehicles and inaccessible resources), and shall, in addition, include in financial resources any boats, snowmobiles, and airplanes used for recreational purposes, any vacation homes, any mobile homes used primarily for vacation purposes, any licensed vehicle (other than one use to produce earned income or that is necessary for transportation of a physically disabled household member and any other property, real or personal, to the extent that it is directly related to the maintenance of use of such vehicle), used for household transportation or used to obtain or continue employment to the extent that the fair market value of any such vehicle exceeds $4,500 and, regardless of whether there is a penalty for early withdrawal, any savings or retirement accounts (including individual accounts).

which [an] eligible household may own" with financial resources parenthetically defined as liquid and nonliquid. The "liquid and nonliquid" assets creates a category too exclusive to omit motor vehicles which are among the principal assets of many U.S. households. Subsection (g)(2) enumerates kinds of motor vehicles which can be considered a financial "resource." When Congress amended § 2014(g) in 1990 and 1991 to add subsection (g)(5) it continued to use the key word "resources" in providing, that a "resource" shall be excluded as inaccessible if it meets the tests set forth in the 1990 legislation and further spelled out in the 1991 amendment. Because "resources" already denoted certain motor vehicles, as subsection (g)(2) so plainly provided, the same word must be read to include such vehicles in subsection (g)(5). Words used more than once in the same statute should be presumed to have the same meaning. *Boise Cascade Corp. v. U.S.A.,* 942 F.2d 1427, 1432 (9th Cir.1991). A basic principle of statutory construction is that every provision be read so as to give meaning to the whole and to each of its parts. *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987)); *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988). Where there is no clear intention to the contrary, the more general provision should not control or nullify the more specific provision. *Guidry v. Sheet Metal Workers Nat. Pension Fund,* 493 U.S.

365, 375, 110 S.Ct. 680, 686, 107 L.Ed.2d 782 (1990).

The sole design of the statute is the determination of food stamp eligibility by determining the allowable financial resources an eligible household may own. Motor vehicles are unquestionably among the kinds of resources which due to encumbrances would fall under § 2014(g)(5). The Court finds that subsection (g)(5) acts more as a "clean-up" provision to § 2014(g). Thus, subsections (g)(2) and (g)(5) can be harmonized to mean that those vehicles which are heavily encumbered should be evaluated under the "inaccessible resources" provision with those vehicles which have equity value evaluated using the fair market value test. This way, an individual who does not have financial access to a resource will not be precluded from receiving help to purchase food. Similarly, those individuals who truly have an accessible resource and who do not otherwise qualify will not be allowed public assistance. Consequently, construing the two subsections as a whole to the case at bar, Plaintiff's lien on her van exceeds its Blue Book value and therefore, a sale of the van would not yield enough to discharge the lien against it. Thus, Plaintiff's van is an "inaccessible resource" due to its heavy encumbrance and she is entitled to food stamps if she otherwise qualifies.

■ The Defendants argue that under the Court's interpretation anyone with less than $2,000 in assets and a newly purchased (but heavily financed vehicle) regardless of the model or make could then have the vehicle

(3) The Secretary shall exclude from financial resources the value of a burial plot for each member of a household and nonliquid resources necessary to allow the household to carry out a plan for self-sufficiency approved by the State agency that constitutes adequate participation in an employment and training program under section 6(d) [7 USCS 2015(d)]. (4) In case of farm property (including land, equipment, and supplies) that is essential to the self-employment of a household member in a farming operation, the Secretary shall exclude from financial resources that value of such property until the expiration of the 1–year period beginning on the date such member ceases to be self-employed in farming. (5) The Secretary shall promulgate rules by which State agencies shall develop standards

for identifying kinds of resources that, as a practical matter, the household is unlikely to be able to sell for any significant return because the household's interest is relatively slight or because the cost of selling the household's interest would be relatively great. Resources so identified shall be excluded as inaccessible resources. A resource shall be so identified if its sale or other disposition is unlikely to produce any significant amount of funds for the support of the household. The Secretary shall not require the State agency to require verification of the value of a resource to be excluded under this paragraph unless the State agency determines that the information provided by the household is questionable.

excluded as a resource and qualify for food stamps. Thus, the scenario of the individual driving to pick up his or her food stamps in a new Cadillac could be a reality which would subject the food stamp program to public criticism.[5]

This "welfare Cadillac" argument is based on sheer emotion and does not view circumstances as they truly exist. While it is possible that an individual may arrive to make his or her food stamp application in an expensive luxury vehicle. In truth, it will be only a matter of weeks before any heavily encumbered vehicle is repossessed from an otherwise eligible food stamp applicant. An individual who qualifies for food stamps will simply not have the funds to make car payments.

Therefore, it is held that licensed vehicles shall be valued at fair market value *unless* the vehicles are so heavily encumbered that they qualify as an "inaccessible resource" because their sale would not produce any significant income for the eligible family. Today's decision is a more reasonable and pragmatic reading of the statute.

### 3. Secretary's Promulgation of Regulations re: "inaccessible resource"

The Secretary asserts that in the absence of evidence of unreasonable delay, the Court should not impose a specific deadline for his completion of the rule-making process. Such matters are more appropriately left to the discretion of the agency, which is best positioned to determine agency priorities and timetables. *See Public Citizen Health Research Group v. Brock,* 823 F.2d 626, 629 (D.C.Cir.1987) (noting that "we are loath to rush in to manage the details of OSHA's . . . rule making procedure" and "we should avoid if possible any direct meddling with the details of OSHA's rule making schedule" where OSHA provided a specific date when its rule would issue). Defendants assert that the Courts have routinely held that rule making proceedings may reasonably take several years. *See Sierra Club v. Gorsuch,* 715 F.2d

653, 658 (D.C.Cir.1983) (agency's projected two-year schedule for revision of standards, following five years "in which the matter lingered on the agency's agenda without a rule making step," not unreasonable where a specific statutory mandate did not exist). Whether the alleged delay is sufficiently egregious to warrant judicial intervention in the administrative process is determined by a "rule of reason." *In re Monore Communications Corp.,* 840 F.2d 942, 945 (D.C.Cir.1988).

However, construing Plaintiff's assertions as true as it must, it is premature to determine whether the Secretary's delay in promulgating the Congressionally mandated rules has been reasonable.

### V. CONCLUSION

Based on the foregoing, Defendant Espy, and the State of Arizona by Joinder, motions to dismiss are hereby DENIED.

**5.** *See* H.R.Rep. No. 464 95th Cong., 1st Sess. 89 (June 24, 1977) 1977 U.S.C.C.A.N. 2067 ("[T]he Committee does not intend either to tolerate abuses of the kind that make the program subject

to public criticism. However rural an area, a household does not have to have a new or slightly used luxury car to traverse distances.").